*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0117p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

JAMES JOHNSON,

                *Defendant-Appellant.*

No. 09-4293

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00099-002—S. Arthur Spiegel, District Judge.

Decided and Filed: May 11, 2011

Before: MOORE and WHITE, Circuit Judges; VARLAN, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Anthony Springer, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. James Johnson was convicted of conspiracy to commit bank fraud and sentenced by the district court to one day of incarceration and three years of supervised release. His supervised release was revoked, however, after he was convicted in state court of aggravated robbery and voluntary manslaughter. He also admitted to possessing and discharging a firearm during the

_____

    [*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

commission of the robbery. When imposing sentence upon revocation of supervised release, the district court sentenced Johnson to thirty-six months of imprisonment, which constituted a fifteen-month upward departure from the advisory Guidelines range of fifteen to twenty-one months. The district court also ordered that the sentence run consecutively to Johnson's twelve-year sentence for his state convictions.

Johnson appeals on the grounds that the sentence imposed by the district court upon revocation of his supervised release was both procedurally and substantively unreasonable. Reviewing for procedural reasonableness, we conclude that the district court properly calculated the Guidelines range, appropriately considered the applicable sentencing factors and the arguments of the parties, and provided an adequate explanation for the sentence imposed, including a specific reason for the upward departure. We also conclude that, under the totality of the circumstances, Johnson's sentence is substantively reasonable. Therefore, we **AFFIRM** the sentence imposed by the district court.

## I.  BACKGROUND

On November 9, 2006, Johnson entered a plea of guilty pursuant to a plea agreement to one count of conspiring to commit bank fraud. The plea agreement stipulated that Johnson conspired with two others—Travelle Grigsby and Frances Roberson—to commit bank fraud by producing and using counterfeit checks. At the direction of Grigsby, the leader of the conspiracy, Roberson would produce the counterfeit checks, and the three co-conspirators would go together to stores such as Lowe's and Home Depot to make large purchases using the checks.

Although the Guidelines range for the bank-fraud conviction was eighteen to twenty-four months, the district court departed downward and sentenced Johnson to only one day of imprisonment, to be followed by thirty-six months of supervised release. The supervised-release sentence included three months to be served in a halfway house and six months of home confinement. Johnson served his one-day sentence, and, on March 27, 2007, began his term of supervised release. Initially, Johnson's adjustment to

supervised release was satisfactory— he successfully completed his halfway-house and home-confinement terms, and, in December 2007, he completed a substance-abuse program. He was also employed full-time until November 2007 and pursuing a degree in engineering at "Cincinnati State."

Johnson's supervised release was revoked, however, in September 2009 after he participated in an aggravated robbery that resulted in the shooting death of the robbery victim. On June 20, 2008, two days after the incident, Johnson was arrested and charged with aggravated murder. While in the custody of the Cincinnati Police Department, Johnson admitted to possessing and discharging a .40-caliber Smith & Wesson semiautomatic handgun during the commission of the robbery. After Johnson's arrest, the grand jury of the Hamilton County Court of Common Pleas issued a three-count indictment against him: Count One charged him with aggravated murder with two specifications, Count Two charged him with voluntary manslaughter with two specifications, and Count Three charged him with aggravated robbery with one specification. On January 29, 2009, Johnson entered a plea of guilty to voluntary manslaughter with a firearm specification, and aggravated robbery with a firearm specification. Johnson was sentenced on February 25, 2009, to a total of twelve years in the Ohio Department of Corrections.

On June 24, 2008, based on Johnson's arrest and his admission to possessing and discharging a firearm, the U.S. Probation Department filed a petition for a warrant and revocation of supervised release. Following Johnson's state convictions, a supervised-release-violation report was prepared alleging that Johnson violated two mandatory conditions of his federal supervised release: 1) the condition to "not commit another federal, state, or local crime," violated by virtue of his state convictions, and 2) the condition to "not possess a firearm or destructive device," violated by virtue of his admission to possessing and discharging a handgun during the robbery. Supervised Release Violation Report ("SRVR") at ¶¶ 1–6. The report classified the violation conduct as Grade A and Johnson's criminal-history category as level II. Based on these factors, Johnson's advisory Guidelines range was calculated to be fifteen to twenty-one

months of imprisonment. The report also noted that, pursuant to 18 U.S.C. § 3583(e)(3), Johnson could be sentenced to no more than three years in prison upon revocation of supervised release because his original federal offense of conviction was a Class B felony. *See* 18 U.S.C. § 3583(e)(3). Additionally, the report advised that, pursuant to Application Note 4 of the U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 7B1.4 (2009), because Johnson's original sentence was the result of a downward departure, an upward departure for the revocation sentence may be warranted. It also noted that, pursuant to U.S.S.G. § 7B1.3(f), any sentence imposed upon revocation of supervised release should run consecutively to any other sentence of imprisonment. In light of the relevant policy statements and the nature of Johnson's violations, the report recommended that Johnson be sentenced to thirty-six months of imprisonment, the statutory maximum, and that the sentence run consecutively to his state sentence.

At his hearing before the district court, Johnson did not challenge any of the facts in the SRVR and admitted to violating the conditions of his supervised release. When the court asked whether Johnson wished to make a statement or present any information, Johnson, through counsel, requested a sentence within the fifteen to twenty-one months Guidelines range, to run concurrently with his state sentence. Johnson argued that a concurrent, Guidelines-range sentence was appropriate because of his low criminal-history category and the efforts he made on supervised release to better himself. Johnson also noted that his underlying federal conviction did not involve firearms or violence, but was a fraud-related crime for which he received a four-level reduction for playing a minimal role in the offense. In light of these considerations, he argued that additional punishment beyond his twelve-year sentence for his state offenses was unnecessary. Finally, Johnson noted that he had significant community and family support, and presented two of his cousins and his grandmother to speak on his behalf.

When Johnson's counsel described the circumstances of Johnson's underlying fraud offense, and the reduction he received for his minimal role, the district court responded, "You know, he didn't seem to learn from his experience, did he?" Sent. Tr.

at 6.  Prior to imposing sentence, the district court explained what it considered to be the pertinent circumstances:

> And you understand the role of the judge is to, in this case, he got a break when he got sentenced to here and he was under certain conditions, and the conditions that as soon as the pressure was off, he lost out at school or whatever reason, he committed the crime for which he was convicted in state court and for which is a violation of his supervised release over here.

*Id.* at 10–11.  The court also discussed its responsibility at sentencing:

> And the sentence that we impose has got to be fair and reasonable under the circumstances, no more than necessary.  And about the only thing I can do, as I see in this case, is this young man didn't learn.  He had his chance, and he commits a violent crime like this.  I have a responsibility to impose a sentence that I think is appropriate under the circumstances.

*Id.* at 11.  Johnson himself then addressed the court in mitigation and claimed that he was not a violent person but rather "just made a few wrong choices in life."  *Id*. at 13.  The court responded, "Well, one of the choices was that you had a weapon.  You knew you were not even supposed to have a weapon, much less use one."  *Id.*  The court then commended Johnson for having been in school, but stated that he showed poor judgment though his involvement in a violent robbery.

After Johnson presented factors in mitigation, the government took the position that, because of the severity of the crimes underlying the violation, an upward departure from the fifteen to twenty-one month Guidelines range was warranted.  Concurring with the SRVR, the government recommended the imposition of a thirty-six-month term, to run consecutively to Johnson's state sentence.  The district court adopted the position of the government and probation department and imposed a consecutive thirty-six-month term of imprisonment.  The court also recommended that Johnson be designated to an institution that will "give him the maximum opportunity to access vocational training."  Sent. Tr. at 15.

When Johnson objected to the upward departure and consecutive sentence, the district court responded:

> You raised those objections before. . . . I recognize I have the discretion to do pretty much everything I've done here. And I have the discretion to make the sentence run concurrent or consecutive. And based on the facts of the situation as detailed by the U.S. Attorney as well as by the pretrial statement that I've reviewed, I believe that the sentence that I've imposed reflects the seriousness of his offense in violating his supervised release in the fashion that he did. I hope it will promote respect for the law; obviously he didn't have any at the time that he became involved.

*Id.* at 16. After considering the § 3553(a) factors, the district court concluded that, "finally, since I think the sentence is within the guidelines, it is proportional with other sentences that are imposed in similar situations." *Id.* at 17. No additional objections were noted. Johnson timely appealed.

## II. ANALYSIS

### A. Standard of Review

We review for abuse of discretion the sentence imposed by a district court upon revocation of supervised release. *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008). In reviewing for procedural reasonableness, a district court abuses its discretion if it "commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

In reviewing for substantive reasonableness, we must consider the sentence imposed in light of "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* For sentences within the Guidelines range, we may apply a rebuttable presumption of reasonableness; but we may not apply a presumption of unreasonableness to sentences outside the Guidelines range. *Id.*; *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). "[We] may consider the extent of the deviation," when reviewing for substantive reasonableness, "but [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify

the extent of the variance." *Gall*, 552 U.S. at 51. "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

## B. Procedural Reasonableness

### 1. Guideline Range

When reviewing a sentence for procedural reasonableness, "[f]irst, we must ensure that the district court 'correctly calculate[ed] the applicable Guidelines range'" because it is "'the starting point and initial benchmark' of its sentencing analysis." *Bolds*, 511 F.3d at 579 (second alteration in original) (quoting *Gall*, 552 U.S. at 49). Johnson notes that, in response to defense counsel's objections to the upward departure, the district court remarked that "the sentence is within the guidelines, it is proportional with other sentences that are imposed in similar situations." Sent Tr. at 17. Johnson interprets this comment to mean that "the district court imposed a 36 month sentence . . . based on an erroneous understanding that the 36 month sentence was actually within the Guidelines range." Appellant Br. at 11.

Johnson's argument, however, is belied by the record. The district court did not say that it had imposed a sentence within the Guidelines range, but rather that the sentence was within *the Guidelines*. Significantly, the relevant policy statement in the Guidelines does provide for an upward departure under these circumstances: Application Note 4 of U.S.S.G. § 7B1.4, as noted by the probation department in the SRVR, states that "an upward departure" upon revocation of supervised release "may be warranted" when, as in this case, "the original sentence was the result of a downward departure." The fifteen to twenty-one month advisory range, moreover, was discussed several times during the hearing. The government and probation department both recommended an upward departure; the district court concurred with their recommendations and overruled defense counsel's objections. Furthermore, the court's remarks were made in response to Johnson's objection to the upward departure specifically. Given the context of the district court's statements, it is clear that the

district court considered the fifteen to twenty-one month advisory Guidelines range and departed upward deliberately.

### 2. Consideration of the Section 3553(a) Factors

We must next "ensure that the district judge gave 'both parties the opportunity to argue for whatever sentence they deem appropriate' and then 'considered all of the [cross-referenced] § 3553(a) factors to determine whether they support the sentence requested by [each] party." *Bolds*, 511 F.3d at 579–80 (alteration in original) (quoting *Gall*, 552 U.S. at 49). The statute governing supervised release, 18 U.S.C. § 3583(e), requires the district court to consider a subset of the § 3553(a) factors.[1] The district court "need not explicitly reference each of the [§] 3553(a) factors" in its sentencing determination; but there must be "sufficient evidence in the record to affirmatively demonstrate the court's consideration of them." *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006).

Johnson contends that in imposing sentence, the district court failed to consider the offense of conviction.[2] The district court must indeed consider, among the other applicable § 3553(a) factors, "the nature and circumstances of the *offense*" when sentencing upon revocation of supervised release. 18 U.S.C. §§ 3553(a)(1) (emphasis added), 3583(e). The "offense" so referenced is the original offense of conviction: the United States Supreme Court has specifically explained that "postrevocation penalties relate to the *original* offense," rather than the violation conduct. *Johnson v. United States*, 529 U.S. 694, 701 (2000) (emphasis added). Postrevocation sanctions are part of the penalty for the original offense because "construing revocation and

---

[1]The § 3553(a) factors cross-referenced by the supervised-release statute include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant appropriate treatment; the pertinent Guidelines or policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *See* 18 U.S.C. §§ 3553(a), 3583(e).

[2]Johnson's challenge can be construed as a challenge to procedural reasonableness, even though he presents this claim as grounds for "*substantive*[] unreasonable[ness]." Appellant Br. at 18, 20 (emphasis added) (citing *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006)); *see United States v. Herrera-Zuniga*, 571 F.3d 568, 579 (6th Cir. 2009) ("[T]he procedural and substantive components of our reasonableness inquiry appear to overlap.") (internal quotation marks omitted).

reimprisonment as punishment for the violation of the conditions of supervised release" raises "serious constitutional questions." *Id.* at 700. When the violations are criminal and the subject of a separate prosecution, as in this case, the defendant may be placed in double jeopardy if punished for the same conduct in both proceedings. *See id.* at 700–01.

The Sentencing Guidelines confirm this view. The violations of a defendant's term of supervised release are properly characterized as "breach[es] of trust" which may be "sanctioned" upon revocation. U.S.S.G. Ch. 7, Pt. A. But the *sanction* for failing to abide by conditions of supervised release is to be distinguished from "the imposition of an appropriate *punishment* for any new criminal conduct" which may occur only following a conviction in a separate criminal proceeding. *Id.* (emphasis added); *see United States v. Malone*, 404 F. App'x 964, 972 (6th Cir. 2010) (Moore, J., dissenting); *United States v. Johnson*, 356 F. App'x 785, 791 (6th Cir. 2009) (unpublished opinion); *United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006). Thus, 18 U.S.C. § 3583(e) required the district court to consider, among other factors, the nature and circumstances of Johnson's original offense—conspiracy to commit bank fraud.

Contrary to Johnson's claim, however, the import of the district court's remarks is that the court considered the original offense. In particular, when defense counsel noted that Johnson had received a reduction in the original fraud offense for his minimal role, the district court concluded, not that this weighed in favor of a more lenient sentence on revocation, but rather that Johnson "didn't seem to learn from his [first] experience." Sent. Tr. at 6. Again, later in the hearing, the district court noted, "this young man didn't learn. He had his chance, and he commits a violent crime like this," and explained, "I have a responsibility to impose a sentence that I think is appropriate under the circumstances." *Id.* at 11. It appears, therefore, from "sufficient evidence in the record," *McBride*, 434 F.3d at 475 n.3, that the district court considered Johnson's violation conduct to be a very serious breach of the trust embodied by the original sentence—which included only one day of imprisonment due to a downward departure—and concluded that the severity of the breach, in light of the leniency in trust

the court had extended him, outweighed the non-violent nature of the bank fraud and Johnson's limited role.

Johnson also argues that his sentence was procedurally unreasonable because "the court failed to consider or address specific mitigating factors" that he raised at sentencing. Appellant Br. at 12. In particular, Johnson contends that he presented the following mitigating factors in support of a concurrent, within-Guidelines sentence, and that the district court failed to address any of them:

> (1) [Johnson] was punished by the state court 12 years for the conduct underlying the supervised release violation, (2) [his] young age, (3) his compliance with the terms of supervised release, (4) his pursuit of a degree at college, (5) his relatively low criminal history, (6) [his] minor and limited role in the offense of conviction, (7) that the offense of conviction did not involve violence, and (8) that a concurrent Guidelines sentence was sufficient punishment for the offense.

Appellant Br. at 13–14.

We have held that "[a]lthough the district court is not required to give the reasons for rejecting any and all arguments made by the parties for alternative sentences, . . . when a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (internal quotation marks, internal citations, and alterations omitted). Contrary to Johnson's claim, however, the record reveals that the district court "'listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007)). Our unpublished decision in *Johnson*, which the defendant cites for support, is of little help to him—the panel in *Johnson* vacated sentence because "the district court failed to address *any*" of the defendant's mitigating arguments. *Johnson*, 356 F. App'x at 795 (emphasis added).

We have already established that here the district court considered the nature and circumstances of the offense of conviction. As to Johnson's other arguments in mitigation, the record shows that the district court was well aware of Johnson's conviction and sentence in state court for the underlying violation conduct and determined that the severity of the breach of trust merited a sentence above the applicable Guidelines range. Although Johnson argued that his low criminal-history category weighed in favor of a Guidelines-range sentence, the district court observed that Johnson had chosen to carry and use a weapon. In spite of Johnson's initial compliance with the terms of supervised release, the district court considered that he ultimately violated those terms by committing a violent crime. The district court commended Johnson for having been in school, but observed that he showed poor judgment by his involvement in a violent robbery. Finally, as will be discussed in Part II.B.3.b., *infra*, the record clearly shows that the district court properly exercised its discretion to impose a consecutive sentence. We are therefore satisfied that the district court was aware of and sufficiently considered Johnson's mitigating arguments.

### 3. Adequate Explanation

#### a. Upward Departure

When imposing a procedurally reasonable sentence, the district court must "adequately explain the chosen sentence—including an explanation for *any deviation* from the Guidelines range."[3] *Gall*, 552 U.S. at 51 (emphasis added); *see Bolds*, 511 F.3d at 580. "Our analysis is the same regardless of whether the sentence enhancement constitutes a Guidelines departure or a § 3553(a) variance." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008); *see Herrera-Zuniga*, 571 F.3d at 586–88 (explaining that a "*deviation*" from the advisory Guidelines range may be "based on a departure or a

---

[3]The Supreme Court has explained that "[t]he sentencing courts, applying the Guidelines in individual cases may depart []either pursuant to the Guidelines"—a departure—"or, since *Booker*, by imposing a non-Guidelines sentence"—a variance. *Rita*, 551 U.S. at 350. Then, "[t]he judges will set forth their reasons. The Courts of Appeals will determine the reasonableness of the resulting sentence." *Id. Cf. Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.").

variance," and an "adequate explanation" is required in either case) (emphasis added). "First, a district court must explain the reasons justifying a departure, and, second, evidence of those reasons must appear in the record. Such explanation allows meaningful appellate review." *United States v. Smith*, 474 F.3d 888, 894 (6th Cir. 2007), *abrogated on other grounds by Gall*, 552 U.S. at 38; *see United States v. Barahona-Montenegro*, 565 F.3d 980, 984–86 (6th Cir. 2009) (vacating sentence when district court failed to explain adequately the chosen sentence, including the application of an upward departure based on underrepresented criminal history).

In particular, when sentencing outside the advisory range, the district court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. Indeed, if a sentence is outside the advisory range, the court is required by statute to state "the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]" 18 U.S.C. § 3553(c)(2) (emphasis added).[4] The Guidelines make clear that, when a district court exercises its discretion to depart, the resulting sentence may be outside the advisory range,[5] and thus, a "specific reason" must be provided for the departure. We have held accordingly that a sentence is procedurally unreasonable when the district court "fail[s] to provide its specific reasons for an upward departure or variance." *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008). In this case, the sentencing range described by the applicable Guidelines or

---

[4]Subsection (c)(2) provides that, if the sentence imposed "is not of the kind, or is outside the range, described in subsection (a)(4)," the court must state "the specific reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c)(2). The range described in subsection (a)(4) is established by, "in the case of a violation of . . . supervised release, the applicable guidelines or policy statements." 18 U.S.C. § 3553(a)(4)(B). Thus, a court must state "the specific reason" for imposing a sentence "outside the range" described by "the applicable guidelines or policy statements."

[5]The Application Instructions to the Guidelines define "Departure" to mean "imposition of a sentence *outside the applicable guideline range* or of a sentence that is otherwise different from the guideline sentence; and . . . for purposes of 4A1.3 (Departures Based on Inadequacy of Criminal History Category), assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence *outside the applicable guideline range*." U.S.S.G. § 1B1.1, cmt. n.1(E) (emphasis added).

policy statements was the initial, pre-departure range of fifteen to twenty-one months, and the district court departed upward to an outside-range sentence.[6]

There has been some debate in this circuit regarding whether the requirement of § 3553(c)(2) to state "the specific reason" for varying or departing from the advisory Guidelines range applies to supervised-release violations, as distinguished from initial sentences. *Compare Malone*, 404 F. App'x at 967–69 (majority opinion), *with id.* at 970–72 (Moore, J., dissenting). However, the plain language of 18 U.S.C. § 3553 provides that § 3553(c)(2) applies to supervised-release-revocation proceedings: § 3553(c)(2) requires a specific statement of reasons for all outside-advisory-range sentences that fall under § 3553(a)(4), which in turn explicitly includes sentences for supervised-release violations. 18 U.S.C. § 3553(a)(4)(B), (c)(2). Accordingly, this circuit has previously applied the explanation requirement of § 3553(c)(2) to supervised-release-revocation proceedings, *see United States v. Manning*, 317 F. App'x 517, 523–24

---

[6]It is not always obvious what counts as a sentence "outside the range" described by "the applicable guidelines or policy statements." *Compare United States v. Pembrook*, 609 F.3d 381, 384–87 (6th Cir. 2010) (holding that, for resentencing purposes, the applicable range is the pre-departure range, and not the range to which the court departed), *with United States v. Hameed*, 614 F.3d 259, 268 (6th Cir. 2010) ("Nowhere have we ruled out the possibility that there might be multiple guideline ranges applicable to a single defendant's sentencing."). A departure, like the initial sentencing range, is provided for by the Guidelines. Thus, when a court applies a departure, the sentence may remain within the Guidelines framework, even if not the Guidelines range. Furthermore, when a district court determines, pursuant to U.S.S.G. § 4A1.3, that the applicable criminal-history category is inadequate, the Guidelines advise courts to consider an adjusted sentencing range. *But see Herrera-Zuniga*, 571 F.3d at 588 ("There is no requirement that, after concluding that a departure is warranted, the court must specify a new, adjusted sentencing range.").

It appears from the Guidelines that in this case, however, the relevant "range" for purposes of § 3553(a)(4) and (c)(2) is the pre-departure range. In the context of supervised-release revocation, the Chapter Seven Policy Statement provides a table from which to calculate "[t]he range of imprisonment applicable upon revocation," U.S.S.G. § 7B1.4, and offers separate guidance in the Application Notes regarding when to depart upwardly "from the applicable range," *id.* at cmt. n.2. The district court here, after calculating the initial sentencing range, applied a discretionary departure to an outside-range sentence, and considered no other relevant range.

The Application Instructions, moreover, establish the order in which courts are to apply the Guidelines provisions to determine "the guideline range." U.S.S.G. § 1B1.1(a). Only after "the guideline range" is determined pursuant to those steps is the court referred to "Parts H and K of Chapter Five, Specific Offender Characteristics and *Departures*, and any other *policy statements* or commentary in the guidelines that might warrant consideration in imposing sentence." *Id.* § 1B1.1(b) (emphasis added); *see Pembrook*, 609 F.3d at 385–87 (interpreting the Application Instructions to mean that discretionary departures do not alter the applicable sentencing range); *see also* U.S.S.G. Supp. to App. C, amend. 741 (effective Nov. 1, 2010) ("*After determining the guideline range*, the district court should refer to the *Guidelines Manual* and consider whether the case warrants a departure.") (first emphasis added). We need not and do not determine, however, whether the pre-departure range is always the only relevant range for purposes of § 3553(a)(4) and (c)(2).

(6th Cir. 2009) (unpublished opinion); *Johnson*, 356 F. App'x at 793–95;**[7]** *see also Malone*, 404 F. App'x at 970–71 (Moore, J., dissenting) (explaining the application of § 3553(c)(2) to supervised-release-revocation proceedings and summarizing cases applying it accordingly), and we so hold today.

Moreover, even if the statutory requirement of a "specific reason" were not believed to apply here, this circuit has held that "sentences imposed following revocation of supervised release are to be reviewed under *the same abuse of discretion standard* that we apply to sentences imposed following conviction." *Polihonki*, 543 F.3d at 322 (internal quotation marks and alteration omitted) (emphasis added). That inquiry requires "an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51; *see also id.* at 46 ( "[A] district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications.").

We established, *supra*, that the district court properly considered the relevant § 3553(a) factors in sentencing, and we are also satisfied that the district court provided a "specific reason" for departing upward. In response to Johnson's objection to the upward departure, the district court explained that:

> [B]ased on the facts of the situation . . . , I believe that the sentence that I've imposed reflects the seriousness of his offense in violating his supervised release in the fashion that he did. I hope it will promote respect for the law; obviously he didn't have any at the time he became involved.

Sent. Tr. at 16. The district court then explained that the sentence was intended to provide just punishment, adequate deterrence, and opportunities for education and vocational training. As demonstrated by the record, the district court justified the

---

**[7]**Notably, in *United States v. Dawe*, 362 F. App'x 436 (6th Cir. 2010) (unpublished opinion), we vacated a sentence imposed upon probation revocation when a district court departed upward and failed at the sentencing hearing to explain "the specific reason" for the upward departure, *id.* at 439–40. The district court in *Dawe* departed upward in accordance with Application Note Four to § 7B1.4, the same policy statement at issue here; at the hearing, however, the court did not reference the relevant policy statement or otherwise provide its reasons for disagreeing with the applicable Guidelines range. *Id.*

sentence imposed based on its review of the relevant § 3553(a) factors and provided a specific reason for the upward departure—namely, the gravity of Johnson's breach of trust. Thus, when deciding to depart upwardly, the district court considered, among other factors, the nature and circumstances of the original offense, including the downward departure in the original sentence, and Johnson's history and characteristics, including the violation conduct. Review of the record therefore establishes that the district court "adequately explain[ed] the chosen sentence" and provided "an explanation for [the] deviation from the Guidelines range." *Gall*, 552 U.S. at 51. We hold, therefore, that the district judge complied with his duties to review the relevant § 3553(a) factors and to state "the specific reason" for departing upward.

### b. Consecutive Sentence

Johnson also argues that his sentence is procedurally unreasonable because the district court failed to provide reasons for imposing a consecutive rather than concurrent sentence. At his sentencing hearing, Johnson requested that the district court impose the federal sentence concurrent to his twelve-year state sentence in light of the mitigating factors he presented to the court. The district court denied his request and ordered his thirty-six month sentence to be served consecutively to his state sentence, overruling Johnson's subsequent objection.

When a defendant is subject to an undischarged sentence of imprisonment, the district court generally has authority to impose a term of imprisonment on the current offense to run concurrently with or consecutively to the prior undischarged term. 18 U.S.C. § 3584(a). Exercise of that authority, however, is predicated on the district court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable Guidelines or policy statements issued by the Sentencing Commission. 18 U.S.C. § 3584(b). Specifically, when imposing sentence upon revocation of supervised release, the policy statement in U.S.S.G. § 7B1.3(f) provides that:

> Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not

the sentence of imprisonment being served resulted from the conduct that
is the basis of the revocation of . . . supervised release.

U.S.S.G. § 7B1.3(f). This policy statement is not binding on the district court, and construing it to be mandatory would be reversible error. *See United States v. Sparks*, 19 F.3d 1099, 1101–02 & n.3 (6th Cir. 1994). Nonetheless, the district court must consider § 7B1.3(f) when it is applicable and may exercise its discretion to apply it when determining whether to impose a consecutive sentence. *Id.* at 1102; *see United States v. Balli-Solis*, No. 09-5238, 2010 WL 3724605, at *6–7 (6th Cir. Sept. 15, 2010) (unpublished opinion); *United States v. Olivo*, 127 F. App'x 880, 882–83 (6th Cir. 2005) (unpublished opinion).

When sentencing Johnson, the district court properly noted that it "ha[d] the discretion to make the sentence run concurrent or consecutive" and then exercised that discretion to order that the federal sentence be served consecutively to Johnson's state sentence. Sent. Tr. at 16. The district court's determination of the length of Johnson's sentence and his decision to impose the sentence consecutively to the undischarged state sentence were intertwined. As required by § 3584(b), the district court indicated that it believed a consecutive sentence to be appropriate in light of several § 3553(a) factors.[8] U.S.S.G § 3584(a), (b). There is no requirement that the district court state a "specific reason" for a consecutive sentence, and the relevant Guidelines and policy statements presume that multiple terms of imprisonment imposed at different times are consecutive. U.S.S.G. § 7B1.3(f); 18 U.S.C. § 3584(a); *United States v. McCree*, 299 F. App'x 481, 483 (6th Cir. 2008) (unpublished opinion). "Where, as here, the court makes *generally clear* the rationale under which it has imposed the consecutive sentence . . . , it does not

---

[8] Johnson also urges that the district court failed to consider additional factors provided by U.S.S.G. § 5G1.3(c) and the relevant commentary—such as "[t]he type . . . and length of the prior undischarged sentence"—in its determination of whether to impose a concurrent or consecutive sentence. *See* U.S.S.G. § 5G1.3 cmt. n.3(A)(ii); *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). However, § 5G1.3(c) does not apply to this sentencing proceeding. The § 5G1.3(c) factors must be considered "in cases in which the defendant was on federal or state . . . supervised release at the time of the instant offense and has had such . . . supervised release revoked. . . . [in which case] the sentence for the instant offense [should] be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. § 5G1.3 cmt. n.3(C). But the "sentence imposed for the revocation" *is* the sentence being imposed here. Essentially, § 5G1.3(c) applies to the reverse of this situation—the sentencing for the criminal conduct underlying the violation, not upon revocation of the supervised-release portion of the original sentence for the initial offense.

abuse its discretion." *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998) (emphasis added). We are therefore satisfied that the district court did not abuse its discretion in imposing a consecutive sentence.

## C. Substantive Reasonableness

Given Johnson's lenient initial sentence for his original conviction, the severity of the violations of the terms of his supervised release, and the § 3553(a) factors considered by the district court in sentencing, the length of Johnson's sentence—thirty-six months of imprisonment, incorporating a fifteen-month upward departure—is not substantively unreasonable. *See, e.g.*, *United States v. Brown*, 501 F.3d 722, 726 (6th Cir. 2007) (affirming imposition of ten-month upward departure upon revocation of supervised release following multiple drug and alcohol-related violations). "[We] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. Committing a violent crime and using a firearm constituted serious breaches of the trust invested in Johnson by virtue of his supervised-release sentence, and the relevant policy statement endorsed departing upward upon revocation in light of the downward departure applied to his original sentence. We conclude, therefore, that "tak[ing] into account the totality of the circumstances," including the fifteen-month upward departure, the district court did not abuse its discretion in sentencing Johnson to thirty-six months of imprisonment. *Bolds*, 511 F.3d at 581.

## III. CONCLUSION

Reviewing for procedural reasonableness, we conclude that the district court properly calculated the Guidelines range, appropriately considered the applicable sentencing factors and the arguments of the parties, and provided an adequate explanation for the sentence imposed, including a specific reason for the upward departure. We also conclude that, under the totality of the circumstances, Johnson's sentence is substantively reasonable. Therefore, we **AFFIRM** the sentence imposed by the district court.